IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DARRELL DEVON HUNTER, ) | |
| ) | CIVIL ACTION NO. 0:06-2505-HMH-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| IGC KEN RAINWATER, WARDEN ) | |
| MICHAEL SHEEDY, DHO ANGELIA R. ) | |
| BROWN, AND IGA ANN HALLMAN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 13, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 14, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter responded by filing his own motion for summary judgment on March 22, 2007, to which the Defendants filed a response on April 9, 2007. These motions are now before the Court



for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that on February 8, 2005 he appeared before a major disciplinary hearing at the Turbeville Correctional Institution (TCI) on a charge of sexual misconduct. Plaintiff alleges that the accusing officer was present and was questioned by his counsel substitute. Plaintiff alleges that the accusing officer testified that she was not sure Plaintiff committed the offense, but that the hearing officer (the Defendant Brown) nevertheless improperly convicted him. Plaintiff alleges he filed a grievance with the Defendant Rainwater (grievance coordinator), but that Rainwater denied his grievance. Plaintiff alleges that Rainwater did not properly examine the evidence before making his decision. Plaintiff alleges that his grievance was then forwarded to the Defendant Michael Sheedy (Warden), who also improperly denied his grievance. Ann Hallman is listed as a Defendant because she is alleged to be Rainwater's supervisor, and because she failed to "look into" the matter and reverse his conviction.

Plaintiff alleges that he filed a notice of appeal with the administrative law court, and that this court reversed his conviction as being clearly erroneous. Plaintiff complains that it took a "whole year" to get this matter resolved, which required him to be placed in lock-up, where he apparently still is because of other disciplinary charges incurred since being placed in lock-up.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Both parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Plaintiff seeks monetary damages for having been deprived of his constitutional rights by the Defendants. See generally, Verified Complaint with attached Exhibits (grievance forms and administrative court ruling). Plaintiff has also submitted a copy of the transcript from his disciplinary hearing. See Court Document No. 16-2.

In support of summary judgment in the case, the Defendants have submitted a copy of Plaintiff's disciplinary report and hearing record (Court Document No. 20-3), a copy of the transcript of Plaintiff's disciplinary hearing (Court Document No. 20-4), and a copy of Plaintiff's inmate offense history (Court Document No. 20-5). As attachments to his motion for summary judgment, Plaintiff has submitted a copy of the SCDC policy/procedure on inmate discipline (Court Document No. 25-2).

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material

3



fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds and concludes that the Defendants are entitled to summary judgment on Plaintiff's claim. The evidence reflects, and indeed it does not appear to even be contested, that Plaintiff was provided with written notice of the charges, was provided the opportunity to have his accuser present at the hearing and to present his own testimony and evidence, and was provided with a counsel substitute to help him present his case. See Defendants' Exhibit, Disciplinary Report and Hearing Record, Court Document No. 20-3. Plaintiff was also provided with a copy of the final report and decision which cited the evidence on which the hearing officer relied and the reasons for the action taken, following which he was then allowed to appeal his conviction (ultimately obtaining a reversal of the conviction on appeal). See Plaintiff's Exhibit, Order of Reversal in Hunter v. South Carolina Department of Corrections, Docket No. 05-ALJ-04-00359-AP. This record reflects that Plaintiff was provided the due process to which he was entitled as a prison inmate, and the undersigned can discern no constitutional violation in this evidence. See generally, Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974) [setting out due process requirements for prison disciplinary proceedings]; Luna v. Pico, 356 F.3d 481, 487-488 (2d Cir. 2004) [noting that due process requirements are satisfied where a prisoner is given advance written notice of the charges, the right to participate in the hearing and a qualified right to call witnesses, and provided with a written statement setting out the decision and the reasons therefore]; Young v. Hoffman, 970 F.2d 1154 (2d Cir. 1992) [discussing administrative appeal process as part of the due process protection afforded prisoners]; Harper v. Lee, 938 F.2d 104, 105 (8th Cir. 1991) [same].

Plaintiff's claim is essentially based on the fact that his conviction was overturned,

4



with the administrative law court finding that there was not sufficient evidence to sustain his conviction. However, just because Plaintiff's conviction was reversed does not mean that a constitutional violation occurred. Harper, 938 F.2d at 105-106; *cf.* Young, 970 F.2d at 1156. Under the applicable caselaw, a disciplinary decision is sufficient to pass scrutiny under the due process clause as long as it is supported by "some" evidence. Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445, 456-457 (1985) [In an institutional setting, the factfinder need only show that some evidence existed to support the decision]; see also Piggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003); Baker v. Lyles, 904 F.2d 925 (4th Cir. 1990); Sales v. Murray, 862 F.Supp. 1511 (W.D.Va. 1994); McClung v. Shearin, No. 03-6952, 2004 WL 225093 (4th Cir. February 6, 2004). Here, the transcript provided to the Court shows that the charging officer, Officer Burgess, testified that she saw the Plaintiff in Room 215 masturbating. While she testified that she did not know who the Plaintiff was, and had to get this information from another officer (Officer Rogers), she did identify Plaintiff as being the inmate who was in the room. See Exhibit, Disciplinary Hearing Transcript, pp. 5-6. When asked by the hearing officer whether Plaintiff was the one she had seen masturbating, Officer Burgess responded "without a doubt, without a doubt." Burgess and the hearing officer then later had the following exchange:

**DHO**:   Did you say Ofc. Rogers, that I/M right there was masturbating on me or what did you do? Or did you just say an I/M in 215 is masturbating on me?

**Ofc.**:   When he came back to the desk & he looked at to the room, I said, Ofc. Rogers, that I/M right there, I don't know him. So I pointed him out.

**C/S [Counsel Substitute]**: Is this the man you pointed out?

**Ofc.**:   That's who I saw.

**DHO**: Then Ofc. Rogers told you the person you were pointing at, he told you who he was?



**Ofc.**:  Yes.

Id, at pp. 6-7.

While the administrative law court subsequently reversed the conviction because portions of the transcription were marked "inaudible" and finding that the accuser displayed uncertainty as to identification without prompting from the hearing officer, the record in this case nevertheless clearly reflects that there was "some" evidence to support the hearing officer's decision. Therefore, no due process violation has been shown in the evidence with respect to Plaintiff's disciplinary hearing and conviction.

It is possible that Plaintiff has also intended to assert some type of complaint concerning the prison grievance process itself, since he complains about how his grievances were reviewed and denied. However, with respect to any complaints concerning the operation of the grievance system itself, as opposed to the substantive claims contained in his grievances, that is not a claim cognizable under 42 U.S.C. § 1983, since there is no constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim]; Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996



WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); *cf.* Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure].

      Plaintiff's complaint that he was placed in lock-up pending resolution of these charges also fails to set forth a constitutional claim, as he had no constitutionally protected "liberty" interest in remaining in the general population. Jordan v. Federal Bureau of Prisons, 191 Fed.Appx. 639, 655 (10th Cir. July 25, 2006) ["'Administrative segregation of an inmate, pending completion of an investigation of disciplinary charges against him, does not require elaborate procedural protections,' but requires only the inmate be given notice of the charges against him, an opportunity to present his story, and the reasons for the administrative detention.") (quoting Crispwell v. Gunter, No. 93-1137 1993 WL 372689, at *2 (10th Cir. Sept. 24, 1993)). See generally, Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed], cert. denied, 513 U.S. 889 (1994); Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; Hewitt v. Helms, 459 U.S. 460, 468 (1983) ["The transfer of an inmate to less amenable and more restrictive quarters for non punitive reasons is well within the terms of



confinement ordinarily contemplated by a prison sentence."][3]; see also Adams v. Rice, 40 F.3d at 75; cf. Sandin v. Conner, 515 U.S. 472 (1995) [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmates confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest]; Jackson v. Bostick, 760 F.Supp. 524, 528 (D.Md. 1991); Mikeska v. Collins, 900 F.2d 833 (5th Cir. 1990); James v. Reno, 39 F.Supp.2d 37 (D.D.C. 1999); Moody v. Daggett 429 U.S. 78, 88 n. 9 (1976); Locklear v. Holland, No. 98-6407, 1999 WL 1000835 at **2 (6th Cir. Oct. 28, 1999) [Prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated]; Unger v. Crabtree, No. 95-36281, 1996 WL 588500 (9th Cir. Oct. 7, 1996) ["Because federal prisoners have no protected liberty interest in their custody classification levels, [Petitioner's] numerous challenges to his classification level are unavailing in this forum"]; Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) [holding administrative segregation placement is not a deprivation of a constitutionally cognizable liberty interest], cert. denied, 517 U.S. 1196 (1996).

Finally, to the extent Plaintiff is asserting a claim based on the Defendants' alleged violation of, or failure to follow, their own policies and procedures, this assertion also fails to set forth a claim of a constitutional magnitude. The failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. See Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]). See also Scott v. Hamidullah, C/A No.

---

[3]Unrelated portions of the holding in Hewitt v. Helms have been superannuated by later caselaw. This portion of the holding in Hewitt v. Helms has not been superannuated by later caselaw.

8



3:05-3027-CMC-JRM, 2007 WL 904803 *5 n.6 (D.S.C. March 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue].

## **Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

September 6, 2007



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

